IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HORIZON BANK SSB, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> DAN PATRICK, *In His Official Capacity as Joint* § <br> *Chair of the Legislative Budget Board*, DADE § <br> PHELAN, *In His Official Capacity as Joint Chair of* § <br> *the Legislative Budget Board*, and GLENN HEGAR, § <br> *In His Official Capacity as Texas Comptroller of Public* § <br> *Accounts*, § <br> § <br> Defendants. § | 1:23-CV-691-RP |

## ORDER

Before the Court are several motions to dismiss filed by Defendants Dan Patrick ("Patrick"), in his official capacity as joint chair of the Legislative Budget Board, (Dkt. 13), Dade Phelan ("Phelan"), in his official capacity as joint chair of the Legislative Budget Board, (Dkt. 12), and Glenn Hegar ("Hegar"), in his official capacity as Texas Comptroller of Public Accounts, (Dkt. 14). Plaintiff Horizon Bank SSB ("Horizon Bank") filed a consolidated response to the motions, (Dkt. 25). Having considered the parties' briefs, the record, and the relevant law, the Court will grant Patrick and Phelan's motions in full, grant Hegar's motion in part as to Horizon Bank's state law claims, and deny Hegar's motion in part as to Horizon Bank's federal law claims.

### I. BACKGROUND

#### A. Factual History

This case concerns 600 West 5th St., a new state-of-the-art office building in downtown Austin built by Horizon Bank. (Compl., Dkt. 1, at 10). On June 1, 2022, Horizon Bank entered into a lease agreement (the "Lease Agreement") with the Texas Permanent School Fund Corporation ("PSFC"), a state governmental corporation that receives appropriations from the Texas Legislature.

1

(*Id.* at 1). The Lease Agreement contemplates PSFC leasing office space from Horizon Bank at the 600 W. 5th St. building for approximately ten years. (*Id.* at 1–2).

Under the terms of the Lease Agreement, Horizon Bank was obligated to construct the building with certain improvements and modifications. (*Id.* at 11). Horizon Bank was obligated to deliver the premises in the agreed condition on or before September 1, 2023. (*Id.* at 11). In return, PSFC was obligated to make certain initial improvements to the leased space as well, and to begin making rental payments "on the earlier of: (i) the date that is 210 days following the delivery of the premises by Horizon Bank to the PSFC; or (ii) the date the PSFC actually takes possession of the leased premises for the purpose of conducting its business operations." (*Id.*). PSFC agreed to make rental payments for approximately ten years after the date it moved in. (*Id.* at 1–2). To induce Horizon Bank to sign the lease agreement, PSFC represented that there was an "extremely low risk" that the Texas Legislature would not appropriate the adequate funds to PSFC. (*Id.* at 2). Relying on these representations, Horizon Bank signed the Lease Agreement with PSFC. (*Id.*). The Lease Agreement allegedly became binding and enforceable on the day it was signed—June 21, 2022. (*Id.* at 11).

Horizon Bank reports that it has been fulfilling its obligations under the Lease Agreement, building the office space to specifications set forth in the contract and preparing for PSFC to occupy the space. (*Id.* at 2). However, on June 18, 2023, Governor Greg Abbott signed into law the General Appropriations Bill for the 2024-2205 biennium ("H.B. 1"). (*Id.* at 3). The appropriations bill contains a budget rider ("Rider 7") that forbids PSFC specifically from using any funds appropriated to lease from privately owned office spaces, effectively prohibiting PSFC from fulfilling the Lease Agreement with Horizon Bank. (*Id.*). Although H.B. 1 appropriates sufficient funds to pay for the Lease Agreement, it prohibits PSFC from using those funds to pay for private facilities (with one exception for PSFC's current lease at the Moody Bank Building). (*Id.*). On June 6, counsel for PSFC

informed Horizon Bank that it planned to default on the lease because it cannot enter into a lease with a private entity under Rider 7.

On June 20, 2023, Horizon Bank brought suit against Phelan, Patrick, and Hegar. (*Id.*). Horizon Bank alleges that Rider 7 violates the Contract Clause of the U.S. Constitution, the "One Subject" Clause of the Texas Constitution, and the Contract Clause of the Texas Constitution. (*Id.* at 15–20). The Defendants all filed separate motions to dismiss in early August 2023. (Dkts. 12, 13, 14).[1] They claim that this Court lacks subject-matter jurisdiction because the injuries are not traceable to them or redressable. They argue that the state law claims are barred by sovereign immunity, and that the *Ex parte Young* exception does not apply to their federal law claims. In addition, they argue that Horizon Bank has failed to plead a viable federal or state Contract Clause violation.

### B. The Parties

Horizon Bank is a state savings bank with its principal place of business in Austin, Texas. (*Id.* at 4). Patrick and Phelan are sued in their official capacities as Joint Chairs of the Legislative Budget Board. (*Id.*). Horizon Bank alleges that the Legislative Budget Board is "responsible for monitoring agency compliance with the budget and is empowered with budget execution authority." (Pl.'s Resp., Dkt. 25, at 19). They contend that this enforcement power extends to orders that "a state agency be prohibited from spending, obligating the expenditure of, or distributing part or all of an appropriation made" and that such enforcement powers have been recognized by the Texas Attorney General. (*Id.* at 19–20).

Hegar is the Comptroller of the State of Texas and is sued in his official capacity. (Compl., Dkt. 1, at 2). Horizon Bank contends that he has enforcement power under Rider 7 because he may

---

[1] Both Hegar and Patrick are represented by the Texas Attorney General. Phelan is not.

approve vouchers and issue warrants, and his purpose is to enforce Texas appropriations laws. (Pl.'s Resp., Dkt. 25, at 25–26).

### C. Rider 7

In relevant part, Rider 7 states:

> (a) [N]one of the funds appropriated by this Act, including funds appropriated from the Permanent School Fund Account No. 44, may be used for the purpose of leasing or renting office space from an entity unless the entity is appropriated funds under this Act.
>
> (b) It is the intent of the Legislature that funds appropriated above and funds from the Permanent School Fund Account No. 44 may not be used for the purposes of renting or leasing office space from an entity not receiving an appropriation under this Act.
>
> (c) Notwithstanding sections (a) and (b) of this rider, funds appropriated above may used to lease office space in the building occupied by the PSFC on January 1, 2023 at 400 W. 15th Street in Austin, TX. It is the intent of the Legislature that any such lease agreement be limited to the amount of time necessary to complete a transition to renting or leasing of office space from an entity receiving an appropriation under this Act, with a termination date of no later than April 30, 2025.

General Appropriations Act, Chapter 1170 (H.B. 1), Acts of the 88th Legislature, Regular Session 2023.

## II. LEGAL STANDARD

### A. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on

the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

### III. DISCUSSION

Defendants' motions to dismiss raise several arguments, including (1) that Horizon Bank's state law claims are barred by sovereign immunity, (2) that their injuries are not traceable to or redressable by the respective Defendant, and (3) that Horizon Bank fails to state a valid federal or state contract clause claim. The Court will address each in turn.

#### A. State Law Claims and Sovereign Immunity

First, the Court addresses whether Horizon Bank's state law claims may proceed. Horizon Bank brings two claims under Texas state law, alleging a violation of the Texas Constitution "One Subject" Clause, Tex. Const. Art. III § 35, and the Texas Constitution Contract Clause, Tex. Const. Art. I § 16. (Compl., Dkt. 1, at 16-20). All Defendants move to dismiss those claims on the grounds that they are barred by sovereign immunity.

The Eleventh Amendment provides immunity for a sovereign not to be sued without its consent. *Virginia Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). A state may waive its sovereign immunity, and the Supreme Court has created certain, narrow exceptions to immunity, including under the *Ex parte Young* doctrine. *Id.* at 253–54 (citing *Ex parte Young*, 209 U.S. 123 (1908)). Absent waiver or a valid exception, "federal courts may not entertain a private person's suit against a State." *Id.* at 254. *Ex parte Young* operates as an exception to sovereign immunity if the plaintiff is "seeking to prevent an ongoing violation of a *federal* law." *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022) (emphasis in original); *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (same). Accordingly, claims which seek to redress violations of *state* law do not fall under the purview of *Ex parte Young*.

6

The Supreme Court has expressly barred the application of *Ex parte Young* to state law claims, noting,

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Attempting to sustain their state law claims against Defendants, Horizon Bank argues that Texas has waived its immunity from suit under the Texas Uniform Declaratory Judgment Act ("UDJA"). (Pl.'s Resp., Dkt. 25, at 21 (citing Tex. Civ. Prac. & Rem. Code. Ann. § 37.004(a))). Because waiver is a substantive issue, and the text of the UDJA does not limit the waiver to state court, Horizon Bank argues that the Court should use the state's substantive law under *Erie* and apply the waiver as a state court might. (*Id.* at 21–23 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938))).

This argument is unavailing. A state's waiver of its immunity in its own state courts does not transpose that waiver into federal court cases. *See Florida Dep't. of Health and Rehab. Services v. Florida Nursing Home Assn.*, 450 U.S. 147, 150 (1981) (per curiam) (noting that a state does not waive Eleventh Amendment immunity by consenting to suit in its own courts). Even accepting that "waiver" is a substantive matter, *Erie* does not change this outcome. A state law's waiver of immunity applies only in state court, unless explicitly stated otherwise. *See id.*; *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) ("In order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*."); *see also Port Auth. Trans –Hudson Corp. v. Feeney*, 495 U.S. 299

(1990) (upholding waiver where statute expressly waived immunity, *inter alia*, in a "judicial district, established . . . by the United States"). The Court cannot apply Texas's substantive waiver law here because it applies only in state court. In order for the UDJA to waive immunity in federal court, it must explicitly state an intention to do so. *Id.* Although the UDJA does not expressly limit waiver to state court, that silence is not sufficient to waive sovereign immunity in federal court. *C.f. Feeney*, 495 U.S. at 309 (applying waiver where text of statute plainly waived immunity in federal court).

Horizon Bank further argues that the *ultra vires* exception to sovereign immunity applies in this suit. Under Texas law, "*ultra vires* acts—or those acts without authority—should not be considered acts of the state at all." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Like UDJA cases, *ultra vires* actions serve as a narrow exception to sovereign immunity. However, Horizon Bank's *ultra vires* argument runs into the same problem as its UDJA claims. While Texas common law may waive the state's immunity for certain *ultra vires* actions in *state* court, that waiver does not apply to federal court absent a specific "intention to subject itself to suit in federal court." *Atascadero*, 473 U.S. at 306. Tellingly, Horizon Bank identifies several federal cases where courts have allowed *ultra vires* actions to proceed, but each case deals with defendants who do not enjoy sovereign immunity. (Pl.'s Resp., Dkt. 25, at 24 (citing *Smith v. City of Bastrop*, No. 1:19-CV-1054-RP, 2020 WL 4018594, at *8 (W.D. Tex. July 15, 2020), *report and recommendation adopted*, No. 1:19-CV-1054-RP, 2020 WL 7672317 (W.D. Tex. Sept. 2, 2020) (suit against mayor without sovereign immunity); *Stem v. Gomez*, 813 F.3d 205, 214 (5th Cir. 2016) (same); *Harper v. Travis Cnty. Emergency Servs. Dist. 5*, 1-17-CV-01174-AWA, 2019 WL 96310, at *3 (W.D. Tex. Jan. 3, 2019) (suit against county official without sovereign immunity)). Because the *ultra vires* waiver does not expressly apply to federal court, sovereign immunity is not validly waived.

In sum, each Defendant is entitled to sovereign immunity on Horizon Bank's state law claims. *Ex parte Young* does not apply to the state law claims, and Texas's waivers under the UDJA

and *ultra vires* actions do not apply to suits in federal court. Accordingly, Horizon Bank's state law claims must be dismissed.

### B. Horizon Bank Has Standing to Sue Hegar

#### 1. *Ex Parte Young* Applies

Having dismissed the state law claims, the Court turns to whether *Ex parte Young* applies to their federal claims, beginning with the claims against Hegar.[2] Horizon Bank brings a claim under the U.S. Constitution's Contract Clause against Hegar, alleging that his ongoing enforcement of Rider 7 is preventing PSFC from fulfilling its obligations under the Lease Agreement. (Compl., Dkt. 1, at 15). For the *Young* exception to apply, a state official, "by virtue of his office must have some connection with the enforcement of the challenged act, or else the suit is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Ex parte Young*, 209 U.S. at 157) (cleaned up). This connection exists if a state official has "(1) the particular duty to enforce the statute in question and (2) a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quotation marks omitted). A "scintilla of enforcement" by the state official will suffice. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 1002).

In his motion to dismiss, Hegar argues that he is not "likely" to enforce Rider 7 because he has "taken no action to interfere with the performance of the contract" between PSFC and Horizon Bank. (Hegar Mot. Dismiss, Dkt. 14, at 9–13). Hegar admits that, as the Comptroller, he is responsible for "writing the checks and keeping the books" for the state government. (*Id.* at 12 (citing Tex. Gov't Code § 403.011)). Nonetheless, he argues that he will not be asked to enforce Rider 7 because any request from PSFC to approve funds for the Lease Agreement would violate

---

[2] Horizon Bank's complaint satisfies the "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002).

state law (through Rider 7). (*Id.*; Def.'s Reply, Dkt. 28, at 3 ("[I]f the PSFC were to authorize a rent payment under the lease . . ., the individuals at the PSFC who took these actions would have violated the Texas Constitution, the General Appropriations Act, and thereby have acted ultra vires."). Because Rider 7 purportedly bars PSFC from requesting funds from Hegar, he argues that he will never actually enforce the rider.

By requiring a likelihood of actual enforcement, Hegar adds an element to *Ex parte Young* that goes beyond the Fifth Circuit's application of the doctrine. *See Morris*, 739 F.3d at 746 (a sufficient connection exists if a state official has "(1) the particular duty to enforce the statute in question and (2) a demonstrated willingness to exercise that duty."). Hegar has demonstrated a duty to enforce Rider 7, even if that duty may never arise. Likewise, he has not disclaimed that he would enforce Rider 7, should PSFC ask for such appropriations. The likelihood of Hegar enforcing Rider 7 speaks to the concreteness of Horizon Bank's injury—not whether Hegar has the power or willingness to enforce the rider. Regardless of whether Hegar ever actually enforces Rider 7, he has the legal authority to enforce the law.

In short, the test for sovereign immunity looks to enforcement power and a willingness to exercise that enforcement power, where a mere "scintilla" of enforcement authority is sufficient. *Tex. Democratic Party*, 978 F.3d at 179; *see also Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 498–501 (5th Cir. 2001) (applying *Ex parte Young* to federal Contract Clause claim against Mississippi's Secretary of State). Enforcement power resides with Hegar regardless of whether PSFC requests approval of the funds. And in the event that a court declares Rider 7 to violate the Contract Clause, it seems plausible (even likely) that PSFC would then ask for approval of the funds. *See infra* Section III.B.2 (finding claims are traceable and redressable because a declaration as to Hegar would at least partially resolve the injury).

Finally, in a footnote, Hegar argues that the claims are not redressable because *Ex parte Young* does not extend to suits seeking specific performance or for money damages. (Mot. Dismiss, Dkt. 14, at 16 n.2). As the Supreme Court has held, "*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's or an order for specific performance of a State's contract." *Virginia Office for Prot. & Advocacy*, 563 U.S. at 256 (cleaned up); *see also Edelman v. Jordan*, 415 U.S. 651, 695 (1974) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.") (internal citations omitted). Still, prospective relief will often require state officials to dip into their state treasury, and "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Edelman*, 415 U.S. at 668. Hegar severely under-briefs this point, so it is not clear in turn from Horizon Bank's response whether their relief would be barred by *Edelman*.

Ultimately, the Court is not convinced that a declaratory judgment holding Rider 7 to violate the Contract Clause would usurp Texas's sovereign immunity. The declaratory judgment would not force Hegar to dip into treasury funds. Instead, it would remove a barrier preventing PSFC from asking for funds from Hegar. Its impact on the treasury would plausibly be ancillary, as PSFC will request funds from Hegar regardless of where they lease their office space. Finally, the relief sought is prospective and does not order the state to pay damages for past contractual violations. *See Edelman*, 415 U.S. at 695 ("It is quite another thing to order the [state official] to use state funds to make reparation for the past. The latter would appear to us to fall afoul of the Eleventh Amendment[.]"). Accordingly, the Court finds that Horizon Bank's action for a declaratory judgment would not violate the state's sovereign immunity.

11

2. The Claims are Traceable and Redressable to Hegar

Hegar's traceability analysis is nearly identical to his Eleventh Amendment argument. Indeed, the *Ex parte Young* analysis "significantly overlap[s]" with the question of Article III standing." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 513 (5th Cir. 2017); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex parte Young*.").

To the extent that the inquiry differs at all from sovereign immunity, Horizon Bank has plausibly alleged an injury that is traceable and redressable to Hegar. Several Fifth Circuit cases set guideposts for determining whether an injury is traceable and redressable to a defendant. In *Okpalobi*, the plaintiffs sued the Attorney General of Louisiana to enjoin enforcement of a state law making abortion providers liable in tort for certain damages. *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001). The Fifth Circuit determined that the Attorney General did not have "any duty or ability to do *anything*" that would enforce the statute and dismissed him for lack of jurisdiction. *Id.* at 426–27. By contrast, in *K.P.*, a group of physicians sued the director of Louisiana's compensation fund to enjoin a law that denied abortion providers the benefits of participation in the fund. *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010). Noting that the defendant board members had "definite responsibilities relating to the application of [the statute]," the Fifth Circuit upheld the existence of a traceable and redressable injury. *Id.* at 124.

Hegar's responsibilities are more akin to the defendants in *K.P.* than *Okpalobi*. Plainly, Hegar has a "definite responsibility" to approve and distribute state appropriations to agencies. Tex. Gov't Code § 403.011. Hegar does not deny that he lacks the ability to deny funding requests that would violate Rider 7. Nor does he disclaim his intention to do so. Indeed, Texas law vests him with the

12

definite responsibility of ensuring that appropriation requests are lawful under the state's legislation. *Id.* Accordingly, the Court finds sufficient responsibilities relating to Rider 7 to establish traceability.

Hegar's arguments appear to reach more towards redressability. In particular, Hegar raises the notion that the injuries are not redressable because PSFC's use of the funds would violate Rider 7 regardless of any declaration against Hegar. (Hegar Mot. Dismiss, Dkt. 14, at 15–16) ("Plaintiff does not plead, or even attempt to suggest, that the Comptroller has the authority to unilaterally repeal or otherwise modify Rider 7.")). Hegar's argument rests on the premise that *complete* redressability is necessary to establish standing. However, "[a] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in original). The fact that a defendant may not be the "sole participant" in enforcing a law does not mean that a plaintiff lacks standing against them. *K.P.*, 627 F.3d at 123.

Here, Rider 7 appears to vest "enforcement" with both the Comptroller, in his duty to deny requests for appropriations that would violate state law, and the director of the PSFC, in that they may not request appropriations from the Comptroller that would violate state law. Rider 7 § (a)-(b). For reasons unknown to the Court, Horizon Bank has not yet sued PSFC or its director(s). A declaration against Hegar that Rider 7 is unconstitutional may not fully redress Horizon Bank's injuries, because it appears possible (though not certain) that PSFC would still decline to fulfill its lease obligations even if Rider 7 were declared unconstitutional. However, "[r]edressability is satisfied even if relief must filter downstream through third parties uncertain to comply with the result, provided the relief would either: (1) remove an obstacle for a nonparty to act in a way favorable to the plaintiff; or (2) influence a nonparty to act in such a way." *Deanda v. Becerra*, 645 F. Supp. 3d 600, 614 (N.D. Tex. 2022) (citing *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565–66 (2019)). A declaration against Hegar would remove an obstacle for PSFC to comply with its lease

obligations. And a declaration that Rider 7 violates the U.S. Constitution would influence PSFC to affirm its lease obligations rather than comply with a moribund state law. *See Ex parte E.H.*, 602 S.W.3d 486, 494 (Tex. 2020) (noting that "unconstitutional law is void, and is no law") (citing *Ex parte Siebold*, 100 U.S. 371, 376 (1880)). Accordingly, the Court finds that the injury is redressable to Hegar.

### C. *Ex Parte Young* Does Not Apply to Patrick or Phelan

While Hegar may have enforcement power under Rider 7, the same cannot be said for Patrick and Phelan. Both are sued in their capacities as Joint Chairs of the Legislative Budget Board. (Pl.'s Resp., Dkt. 25, at 2). Plaintiffs suggest that this Board has enforcement authority because it is "empowered with budget execution authority, which is the authority to shift funds between agency programs, or even between agencies, if the need arises when the legislature is not in session." (*Id.* at 19 (citing Tex. Gov't Code § 322.011)). Plaintiffs emphasize the Legislative Budget Board's power to propose or order "that a state agency be prohibited from spending, obligating the expenditure of, or distributing part or all of an appropriation made to the agency unless the amount is reappropriated by the legislature or is released, or expenditures are approved." (*Id.* (citing Tex. Gov't Code § 317.002(a))).

Patrick and Phelan both argue that they are entitled to legislative immunity in their capacity as chairs of the Legislative Budget Board. (Patrick Mot. Dismiss, Dkt. 13, at 16; Phelan Mot. Dismiss, Dkt. 12, at 7–11). The Court need not reach the question of legislative immunity because Horizon Bank has not shown that the Legislative Budget Board has a sufficient connection to Rider 7's enforcement to overcome more general sovereign immunity. Although Horizon Bank has shown that the Legislative Budget Board *could* order PSFC not to spend its money on a private lease, it has not shown that the Legislative Budge Board *will* issue such an order. To defeat sovereign immunity, the defendant must have a "particular duty" to enforce the law. *City of Austin*, 943 F.3d at 1000-01.

The power to change state budgeting is different than the "particular duty" to do so. Nor have Phelan or Patrick shown a willingness to issue any order to PSFC related to Rider 7. The potential that the Legislative Budget Board could act—but has not—to rearrange internal budgeting to match Rider 7 is insufficient to overcome sovereign immunity. *See City of Austin*, 943 F.3d at 998 (rejecting *Ex parte Young* applicability where attorney general had the ability to act but no connection to the law's enforcement). In sum, neither Phelan nor Patrick have the particular duty to enforce Rider 7, and neither has shown a willingness to use their powers on the Legislative Budget Board to ensure that the rider is obeyed. Absent more evidence regarding their duty or willingness to enforce Rider 7, they do not fall under the *Ex parte Young* exception.

### D. Horizon Bank States a Viable Contract Clause Claim

Having dismissed Phelan and Patrick, the Court turns to Hegar's 12(b)(6) claim that Horizon Bank fails to state a valid claim under the Contract Clause of the U.S. Constitution. (Hegar, Mot. Dismiss, Dkt. 14, at 20–22). When the state is a party to a contract, courts should engage in a three-part[3] inquiry:

> First, the court should determine whether the contracts surrender 'an essential attribute of the state's sovereignty. . . . Second, even if the impairment is subject to the Contract Clause, the court must determine whether the impairment is 'reasonable and necessary' without giving 'complete deference' to the legislature's judgment. In sum, the court must first determine whether the impairment of the contract is substantial and the degree of that impairment. If the impairment is not substantial, there is no claim under the Contract Clause. The court must next assess the strength of the State's justification for the impairment. The justification must identify a public purpose that is significant and legitimate. If the State fails to provide such a justification, the impairment violates the Contract Clause.

*Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 505–06 (5th Cir. 2001) (cleaned up).

---

[3] Hegar does not seriously raise the third prong—the reasonable necessity of the contract to achieve the public purpose. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 243 (1978).

15

First, Horizon Bank has shown a substantial impairment. Under the terms of the agreement, Horizon Bank was obligated to construct the Horizon Bank Building with certain improvements required by the PSFC and would deliver the premises in the agreed condition on or before September 1, 2023. (Compl., Dkt. 1, at 11). PSFC was obligated to make certain initial improvements to the leased space as well, and to begin making rental payments "on the earlier of: (i) the date that is 210 days following the delivery of the premises by Horizon Bank to the PSFC; or (ii) the date the PSFC actually takes possession of the leased premises for the purpose of conducting its business operations." (*Id.*). The Lease Agreement allegedly became binding and enforceable on the day it was signed—June 21, 2022. (*Id.*).

It is more than plausible that Rider 7 substantially impairs Horizon Bank's rights under the Lease Agreement. Due to Rider 7, PSFC cannot use funds to rent the office space. PSFC appears not to have made improvements to the building as anticipated under the contract. (*Id.*). In sum, Rider 7 effectively blocks PSFC from fulfilling *any* of its obligations under the Lease Agreement. Because the state has passed legislation that unilaterally and completely reneges on its own agency's obligations under the Lease Agreement, Horizon Bank has pled substantial impairment.

Hegar argues that Horizon Bank cannot make this a showing of impairment because it does not attach the Lease Agreement to the complaint. This Court is not aware of any authority requiring a party to attach the entire contract to a complaint to plead a valid federal Contract Clause claim. Moreover, at this early stage of litigation, Horizon Bank need only prove their cause through plausible factual assertions. *See, e.g.*, *Twombly*, 550 U.S. at 563 n.8; *Southard v. United Reg'l Health Care Sys., Inc.*, 7:06-CV-011-R, 2006 WL 1947312, at *3 (N.D. Tex. June 12, 2006) ("Defendant fails to recognize that a Rule 12(b)(6) motion merely tests the adequacy of the pleadings and not Plaintiffs' ultimate evidentiary burden."). The excerpts of the Lease Agreement, as quoted in the complaint, satisfy this burden. (*See* Compl., Dkt. 1, at 2–14).

Next, Hegar suggests that Horizon Bank lacks a reasonable expectation that PSFC would have fulfilled its contractual obligations, because the agency warned Horizon Bank of the small potential that the legislature would not appropriate funds for the lease. (Hegar Mot. Dismiss, Dkt. 14, at 20 ("Plaintiff entered into an agreement with PSFC fully aware that the Texas Legislature could deny the appropriation for lease payments causing PSFC to default.")). First, it is not clear that a state agency's warning that the state legislature may violate the Contract Clause will then somehow immunize the state from liability under the Contract Clause. Indeed, the relevant question is not whether Horizon Bank knew that default was a possibility, but whether it "reasonably expected" a change in the law that would prohibit PSFC from fulfilling its obligations. *United Healthcare Ins. v. Davis*, 602 F.3d 618, 627 (5th Cir. 2010). There is no indication in the parties' briefing that Horizon Bank's expectation for PSFC and the state to uphold the Lease Agreement was unreasonable.

Moreover, PSFC warned that it may be denied sufficient funds for the Lease Agreement—not that the legislature would block its lease specifically. Rider 7 does not refuse to appropriate funds to the agency to lease office space. Tex. Educ. Code § 43.064. Rather, it specifically denies PSFC's ability to use funds to lease Horizon Bank's office space in direct contradiction to the lease that PSFC had already signed. Horizon Bank received no warning that the state would specifically bar it from signing a private lease for office space, so PSFC's disclaimer on the issue of general funding cannot defeat Horizon Bank's reasonable expectations as to the specific appropriation of those funds.

Overall, the Court finds that Horizon Bank has plausibly stated a substantial impairment to a contract. Hegar does not defend Rider 7 as relating to a significant and legitimate public purpose, and Horizon Bank plausibly alleges that the rider is unrelated to such a purpose. Accordingly, because Horizon Bank adequately states a claim for a violation of the Contract Clause, the Court will deny Hegar's 12(b)(6) motion.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Phelan and Patrick's motions to dismiss, (Dkts. 12, 13), are **GRANTED**. Horizon Bank's claims against Phelan and Patrick are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Hegar's motion to dismiss, (Dkt. 14), is **GRANTED** as to Horizon Bank's state law claims and **DENIED** as to Horizon Bank's federal law claims.

**SIGNED** on February 2, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE